UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,       *

                             *

        v.              *

                             *      Criminal Action No. 96-30015

RALPH A. GOODRIDGE,        *

                             *

       Defendant.       *

MEMORANDUM AND ORDER REGARDING
AMENDED MOTION TO VACATE UNDER 28 U.S.C. § 2255
(Dkt. No. 296)

July 23, 2019

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

On June 23, 1997, a federal jury found Ralph A. Goodridge ("Defendant") guilty of three counts: bank robbery in violation of 18 U.S.C. § 2113(a) (Count One), using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count Two),[1] and possession of a firearm by a convicted felon in violation of 18 U.S.C § 922(g)(1) (Count Four). Defendant was sentenced to life imprisonment on Count One pursuant to 18 U.S.C. § 3559(c)(1) (commonly known as the "three strikes law"), which mandated a life sentence for a person convicted of "a serious violent felony" if he or she had two or more convictions of "serious violent felonies" on separate prior occasions. Defendant also was sentenced to life imprisonment on Count Four pursuant to 18 U.S.C. § 924(e)(1) (the Armed Career Criminal Act or "ACCA"), which prescribed a

---

[1] The predicate "crime of violence" for purposes of Count Two was the bank robbery in violation of 18 U.S.C. § 2113(a) in Count One.

mandatory minimum penalty of 15 years imprisonment and a maximum of life for a person who violates section 922(g) and "has three previous convictions" for "a violent felony" committed on different occasions. In addition, Defendant was sentenced to ten years of imprisonment on Count Two, which was to be served consecutively to the life sentences.

On July 20, 2016, the First Circuit granted Defendant's application for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255. In his Amended Second or Successive 28 U.S.C. § 2255 Motion to Vacate, Defendant challenges the life sentences imposed pursuant to the ACCA and 18 U.S.C. § 3559(c), as well as the ten-year sentence for violating 18 U.S.C. § 924(c)(1), based on the principles set forth in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and its progeny. For the following reasons, the court concludes Defendant has met his burden of demonstrating the illegality of his life sentences on Counts One and Four, but he has not done so with respect to his conviction and ten-year sentence on Count Two.

## II. BACKGROUND AND PROCEDURAL HISTORY

Following Defendant's conviction, the United States Probation Office prepared a presentence report ("PSR") in advance of sentencing. (Dkt. No. 311-1, PSR.) Among other information, the PSR recounted Defendant's prior convictions. It identified the following convictions as predicate violent felonies under the ACCA: Massachusetts breaking and entering in the daytime as a juvenile in 1969 (¶ 46); Massachusetts assault and battery on a corrections officer in 1973 (¶ 66); Massachusetts assault and battery with a dangerous weapon ("ABDW"), and assault on a prison guard in 1977 (¶ 77); assault on a federal officer in 1979 (¶ 80); and Massachusetts armed robbery while masked (five counts), and assault with a dangerous weapon ("ADW") (ten counts) in 1985 (¶ 81). (*See* PSR ¶ 85.) The PSR also identified as predicate serious violent felonies under 18 U.S.C. § 3559(c)(1) the 1977 convictions for ABDW and assault on a prison guard (¶ 77), as well as the 1985 convictions for armed robbery while masked and ADW (¶ 81). (*See id.* ¶ 125a.)

At Defendant's sentencing hearing on November 6, 1997, the court (Freedman, J.) explicitly found that the predicate convictions identified in the PSR "at paragraphs 46, 66, 77, 80, and 81" qualified him for Armed Career Criminal status, and thus an enhanced penalty, under 18 U.S.C. § 924(e)(1). (Dkt. No. 297-4 at 4.) The court also found that "there were at least two, if not more, previous acts of violence that this defendant was involved in prior to this particular case . . . that puts the defendant squarely within the three strikes and you're out provisions of" 18 U.S.C. § 3559(c) and therefore mandated a prison sentence of life. (*Id.* at 4-6.) Accordingly, the court sentenced Defendant to "terms of life imprisonment on Count 1 and 4 to be served concurrently . . . followed by a sentence of imprisonment for ten years on Count 2." (*Id.* at 8.)

Defendant filed a direct appeal, claiming trial error related to certain statements made by the prosecutor during closing arguments, but the First Circuit affirmed Defendant's conviction and sentence on January 7, 1999. *See United States v. Goodridge*, 164 F.3d 687 (1st Cir. 1999). Defendant also filed a petition for writ of certiorari, which the Supreme Court denied on May 3, 1999. *Goodridge v. United States*, 526 U.S. 1103 (1999). Then, on March 17, 2000, Defendant filed his first motion to vacate under 28 U.S.C. § 2255, alleging ineffective assistance of counsel as well as evidentiary errors at trial, which the court (Freedman, J.) denied on February 28, 2001. (Dkt. No. 274-2 at 70, 165.) And on July 30, 2002, the First Circuit denied Defendant's request for a certificate of appealability. (Case No. 01-1688.)

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the so-called "residual clause" of the ACCA—defining a "violent felony" as including "any crime punishable by imprisonment for a term exceeding one year . . . that . . . otherwise involves conduct that presents a serious risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)—was unconstitutionally vague. On February 16, 2016, Defendant, relying on *Johnson*, filed a *pro se* application for permission to file a second or successive motion pursuant to 28 U.S.C. §

2255 with the First Circuit. (Case No. 16-1219.) After this court appointed Defendant counsel, he

filed a motion to amend his application for second or successive 28 U.S.C. § 2255 motion with the

First Circuit, seeking to expand his *Johnson*-based challenge to include his sentence under 18 U.S.C. §

3559(c) and his conviction under 18 U.S.C. § 924(c). (*Id.*) The First Circuit granted Defendant's

motion to amend, and on July 20, 2016 granted Defendant's application for permission to file a

second or successive 28 U.S.C. § 2255 motion. (*Id.*; Dkt. No. 275.) On July 29, 2016, the First

Circuit entered a Corrected Judgment clarifying that the order to transfer Defendant's filings to this

court included the amended 28 U.S.C. § 2255 motion. (Dkt. No. 277.) The First Circuit noted,

however, that because Defendant made the necessary showing under 28 U.S.C. § 2255(h)(2)

(requiring a second or successive 2255 motion to contain "a new rule of constitutional law, made

retroactive to cases on collateral review by the Supreme Court, that was previously unavailable") as

to his sentence under the ACCA, it "need not reach the question whether *Johnson* applies to

invalidate the residual clause of 18 U.S.C. § 3559(c)," and it took "no position on whether

[Defendant] may raise additional *Johnson* claims [beyond the ACCA] in the district court." (*Id.*)[2]

On September 21, 2016, this court granted Defendant's Assented-to Motion to Stay, which

sought a stay of this proceeding pending the Supreme Court's decision in *Beckles v. United States*, on

which certiorari had been granted on June 27, 2016. (Dkt. Nos. 282, 283.) Then, on March 9, 2017,

Defendant filed another Assented-to Motion to Stay, this time pending the Supreme Court's

decision in *Sessions v. Dimaya*, on which certiorari had been granted on September 29, 2016. (Dkt.

No. 286.) This court granted Defendant's second motion to stay on March 13, 2017. (Dkt. No. 287.)

In a July 10, 2017 Assented-to Status Report, Defendant reported that although the Supreme Court

---

[2] Notably, the First Circuit cited *United States v. MacDonald*, 641 F.3d 596, 615 (4th Cir. 2011), *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003), and *Nevius v. McDaniel*, 104 F.3d 1120, 1121 (9th Cir. 1996), as examples of cases which "tak[e] [the] position that certification to file [the] entire successive petition in [the] district court should be granted if any one claim satisfies the gatekeeping standard, even if some of the claims in the petition may not, leaving it to the district court to more closely scrutinize each claim and dismiss those that are barred under [§ 2255(h)]." (Dkt. No. 277 (internal quotation marks omitted).)

heard argument in *Dimaya* on January 17, 2017, it subsequently restored that case to its calendar for re-argument the following term. (Dkt. No. 289.) In response, this court extended the stay pending the Supreme Court's decision in *Dimaya*. (Dkt. No. 290.) On November 1, 2018, the parties filed a Joint Status Report explaining that the Supreme Court issued its decision in *Sessions v. Dimaya*, --- U.S. ---, 138 S. Ct. 1204 (2018), and proposing filing deadlines. (Dkt. No. 292.) On November 5, 2018, the court lifted the stay and adopted the parties' proposed briefing schedule, which included the filing of an amended motion to vacate under 28 U.S.C. § 2255. (Dkt. No. 293.) Defendant filed his amended motion to vacate on December 11, 2018, and the parties completed briefing on March 13, 2019. (Dkt. Nos. 296, 308.) On May 8, 2019, however, the court ordered the government to confer with Defendant's counsel and confirm with the U.S. Probation Office that the PSR the government filed as an exhibit in its briefing was the correct, final version of the PSR. (Dkt. No. 309.) On May 15, 2019, the government filed the final version of the PSR, explaining that its initial filing inadvertently included a draft version of the PSR.[3]

## IV. STATUTORY FRAMEWORK

The ACCA fixes a 15-year mandatory minimum sentence for a defendant convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and who "has three previous convictions . . . for a violent felony . . . committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

---

[3] In addition, on June 24, 2019, the Supreme Court issued its decision in *United States v. Davis*, --- U.S. ----, 139 S. Ct. 2319 (2019).

18 U.S.C § 924(e)(2)(B) (emphasis added). The first clause, § 924(e)(2)(B)(i), is generally known as the "force clause." The second clause, § 924(e)(2)(B)(ii), itself contains two distinct parts. The first portion of § 924(e)(2)(B)(ii) (ending with "explosives") is generally known as the "enumerated offenses clause." And the second portion of § 924(e)(2)(B)(ii) (which is italicized) is generally known as the "residual clause." Although the Supreme Court in *Johnson* invalidated the residual clause as unconstitutionally vague, it left intact both the force clause and the enumerated offenses clause. *Johnson*, 135 S. Ct. at 2563. Only the force clause is at issue in this case.

Courts determine whether a prior conviction satisfies the force clause of the ACCA by using the "categorical approach." *United States v. Starks*, 861 F.3d 306, 315 (1st Cir. 2017). Under this approach, "a prior conviction will either count or not based solely on the fact of conviction rather than on facts particular to the individual defendant's case." *United States v. Faust*, 853 F.3d 39, 50 (1st Cir 2017). "[T]he question," therefore, "does not turn on whether the defendant used, attempted to use, or threatened to use violent force in committing the crime as a matter of historical fact, but on whether the use, attempted use, or threatened use of violent force is required to satisfy one of the crime's elements." *Starks*, 861 F.3d at 315. In other words, the court "consider[s] only whether the least serious conduct for which there is a 'realistic probability' of a charge and conviction necessarily involves the use of violent force." *Id.* (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)). If, however, a criminal statute is "divisible"—meaning, it "list[s] elements in the alternative, . . . thereby defin[ing] multiple crimes"—courts look "to a limited class of documents [known as *Shepard* documents] (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (internal quotation marks omitted).

Under 18 U.S.C. § 3559(c), a defendant convicted of "a serious violent felony" is subject to a mandatory minimum life imprisonment sentence if the defendant was previously convicted "on

separate prior occasions" of "2 or more serious violent felonies" and "each serious violent felony used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony." 18 U.S.C. § 3559(c)(1). This statute defines "serious violent felony" similar to the ACCA's definition of "violent felony." First, under 18 U.S.C. § 3559(F)(i), "serious violent felony" includes a list of enumerated offenses and thus is known as the "enumerated offenses clause." Second, under 18 U.S.C. § 3559(c)(2)(F)(ii), "serious violent felony" includes

> any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another *or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.*

18 U.S.C. § 3559(c)(2)(F)(ii) (emphasis added). Again, as with the ACCA, the first part of this definition is known as the "force clause," and the second portion (which is italicized) is known as the "residual clause."

In addition, 18 U.S.C. § 924(c) makes it unlawful for "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). This statute defines "crime of violence" as

> an offense that is a felony and—
>
> (A) has as an element the use, attempted to use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Once again, the first clause, 18 U.S.C. § 924(c)(3)(A), is known as the "force clause" and the second clause, 18 U.S.C. § 924(c)(3)(B), is known as the "residual clause." The Supreme Court in *United States v. Davis*, --- U.S. ----, 139 S. Ct. 2319, 2325-32 (June 24, 2019), held that the categorical approach applies to the residual clause and, as a result, it is unconstitutionally

vague for the reasons explained in both *Johnson* and *Dimaya*. Similar to the ACCA, however, the force clause remains intact.

### III. ANALYSIS

Defendant argues he is no longer subject to enhanced sentencing under the ACCA for Count 4 after the Supreme Court's decision in *Johnson*, 135 S. Ct. 2551, because, with the residual clause now determined to be unconstitutional, his predicate convictions do not qualify as "violent felonies" under the force clause of the statute. Defendant next contends that *Johnson* also applies to invalidate the residual clause in 18 U.S.C. § 3559(c)(2)(F)(ii)—especially in light of the Supreme Court's decision in *Dimaya*, 138 S. Ct. 1204 (2018)—rendering his mandatory minimum life sentence for Count 1 unlawful because, similar to the ACCA, the identified predicates are not "serious violent felonies" under the force clause. Lastly, Defendant argues he is no longer guilty of using and carrying a firearm during a crime of violence in Count 2 because *Johnson* also invalidates the residual clause in 18 U.S.C. § 924(c)(3)(B) and federal bank robbery is not a "crime of violence" under the force clause.

In response, the government argues all of Defendant's claims are procedurally defaulted, and he has not demonstrated the necessary cause and prejudice to overcome the procedural default. The government also argues *Johnson*, 135 S. Ct. 2551, does not apply to 18 U.S.C. § 3559(c) or 18 U.S.C. § 924(c) and, therefore, Defendant cannot satisfy the requirements of 28 U.S.C. § 2255(h)(2). In addition, the government argues that even if *Johnson* does render the residual clauses in 18 U.S.C. § 3559(c)(2)(F)(ii) and 18 U.S.C. § 924(c)(3)(B) void for vagueness, Defendant has sufficient predicate convictions under the force clauses of both statutes.[4]

---

[4] The government also argues that 18 U.S.C. § 924(c)(3)(B) is not void for vagueness in light of *United States v. Douglas*, 907 F.3d 1, 4 (1st Cir. 2018) (holding that "a case-specific approach, considering real world conduct, rather than a categorical approach," applies to the contemporaneous predicate "crime of violence" under 18 U.S.C. § 924(c)(3)(B) and, as a result, the residual clause is not unconstitutionally vague). However, as mentioned, the Supreme Court in *Davis* held 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague because it requires the categorical approach, thereby abrogating the First Circuit's holding in *Douglas*.

A.     ACCA (Count Four)

The government concedes that *Johnson*, 135 S. Ct. 2551, created a new rule of constitutional law as to the ACCA which is retroactive to cases on collateral review and was previously unavailable, thereby satisfying the requirements of 28 U.S.C. § 2255(h)(2) for second or successive 2255 motions. The government also concedes that if Defendant can overcome his procedural default—arising from his failure to raise this claim at trial and on direct appeal—then the government is unable to show that Defendant's predicates are sufficient under the force clause to support his Armed Career Criminal status. However, the government argues Defendant cannot demonstrate adequate cause and prejudice to excuse his procedural default. The court does not agree.

Where, as here, a defendant procedurally defaulted a claim by failing to raise it at trial and on direct appeal, "collateral review under § 2255 will be available only if the [defendant] can show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (quoting *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Cause for procedural default exists "where a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). The Supreme Court in *Reed* identified three situations in which an attorney may lack a reasonable basis to raise a novel claim:

> First, a decision of this Court may explicitly overrule one of our precedents. . . . Second, a decision may "overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." . . . And, finally, a decision may "disapprov[e] a practice this Court arguably has sanctioned in prior cases." . . . By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted.

*Reed*, 468 U.S. at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)).

In finding the ACCA's residual clause unconstitutional, the Supreme Court in *Johnson* expressly overruled holdings in two of its prior cases: *James v. United States*, 550 U.S. 192 (2007), and

*Sykes v. United States*, 564 U.S. 1 (2011). *See Johnson*, 135 S. Ct. at 2563; *see also Welch v. United States*, 136 S. Ct. 1257, 1256 (2016) (holding *Johnson* is retroactive to cases on collateral review). *Johnson* therefore fits *Reed*'s first example of novelty sufficient to overcome procedural default, at least as to defendants who were sentenced after *James*. *See Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018). Defendant, however, was sentenced before the Supreme Court decided *James*. Nevertheless, the court concludes "*Johnson* represented the type of abrupt shift with which *Reed* was concerned," even as to defendants sentenced before *James*, because *"Johnson* abrogated a substantial body of circuit court precedent upholding the residual clause." *Cross v. United States*, 892 F.3d 288, 296 (7th Cir. 2018) (collecting cases). Therefore, *Johnson* also fits *Reed*'s second example of novelty by "overtur[ning] a longstanding and widespread practice . . . which a near-unanimous body of lower court authority ha[d] expressly approved." *Reed*, 468 U.S. at 17 (internal quotation marks omitted). As three circuit courts have explained, "no one—the government, the judge, or the [defendant]— could reasonably have anticipated *Johnson*." *Cross*, 892 F.3d at 295 (quoting *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017)); *see also United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016) (same). Accordingly, Defendant's present claim was not reasonably available at his sentencing or on direct appeal and, as a result, he has cause for his procedural default.

As mentioned, "[t]o overcome procedural default, [Defendant] must also show 'actual prejudice resulting from the errors of which he complains.'" *Lassend*, 898 F.3d at 123 (quoting *Frady*, 456 U.S. at 168). The First Circuit has explained "that the prejudice inquiry dovetails with the merits inquiry." *Id.* Here, the government agrees that without the ACCA designation, the maximum and minimum sentences under Count 4 are reduced significantly. (*See* Dkt. No. 297 at 5.)

Moreover, to the extent the government argues Defendant cannot show his predicates are insufficient under the force clause of the ACCA, the court disagrees. Specifically, the government asserts that even after *Johnson*, Defendant's prior convictions for ADW, armed robbery, and ABDW

continue to qualify as ACCA predicates.[5] As Defendant acknowledges, the First Circuit has held Massachusetts ADW is a violent felony under the force clause of the ACCA. *See United States v. Whindleton*, 797 F.3d 105, 116 (1st Cir. 2015 ("[T]he Massachusetts statute for ADW, 'which criminalizes an assault upon another by means of a dangerous weapon, has as an element the use, attempted use, or threatened use of physical force' as required by the ACCA's Force Clause." (quoting *United States v. Am*, 564 F.3d 25, 33 (1st Cir. 2009)); *see also United States v. Fields*, 823 F.3d 20, 34-35 (1st Cir. 2016); *United States v. Hudson*, 823 F.3d 11, 16-18 (1st Cir. 2016).

In addition, although not argued by the government (in the ACCA context), Defendant's 1985 conviction for ten counts of ADW constitute two separate predicate violent felonies, despite the fact that they were adjudicated the same day. *See* 18 U.S.C. § 924(e)(1) ("In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . *committed on occasions different from one another*, such person shall be fined under this title and imprisoned not less than fifteen years . . . ." (emphasis added)); *United States v. Callahan*, 149 F. App'x 4, 5-6 (1st Cir. 2005) (unpublished) (prior conviction for two counts of drug distribution to the same undercover agent six days apart counted as separate predicate offenses under ACCA); *see also United States v. Mastera*, 435 F.3d 56, 59-60 (1st Cir. 2006) ("Whether two crimes occurred on separate occasions within the meaning of the ACCA requires a case-by-case examination of the totality of the circumstances." (internal quotation marks omitted)). Here, as set forth in the state indictments provided by the government (permissible *Shepard* documents, *see United States v. Gautier*, 590 F. Supp. 2d 214, 232 (D. Mass. 2008)), the underlying offenses occurred in two distinct groupings: one set occurred on June 15, 1984 in Methuen, Massachusetts against one group of victims, and the other

---

[5] This argument appears to contradict the government's separate concessions that "if the Court were to find that the [Defendant] has not procedurally defaulted his § 2255, the government would be unable to show that [Defendant's] predicates are sufficient to support his status as an ACCA." (Dkt. No. 297 at 15; *see also id.* at 4.) In any event, because the court ultimately finds Defendant does not have three ACCA-qualifying predicate convictions, the court addresses the government's argument despite the seemingly contradictory concession.

set occurred on July 19, 1984 in Lawrence, Massachusetts against a separate group of victims. (Dkt. No. 300-1.) The First Circuit has held that "crimes which were committed on different dates, involved different locations, and targeted different victims are to be treated as distinct for purposes of 18 U.S.C. § 924(e)." *United States v. Sullivan*, 98 F.3d 686, 688 (1st Cir. 1996) (citing cases). Defendant, therefore, has two separate predicate violent felonies for ADW under the ACCA.

However, the other two predicates the government relies upon—armed robbery and ABDW—do not qualify as violent felonies under the force clause of the ACCA. As to armed robbery under Mass. Gen. Laws ch. 265, § 17, the First Circuit has explained that the degree of force required to commit the offense "is immaterial so long as it is sufficient to obtain the victim's property against his will," such as a simple purse snatching where the victim is neither touched nor aware of the impending act beforehand. *United States v. Starks*, 861 F.3d 306, 318, 321 (1st Cir. 2017 (quoting *Commonwealth v. Joyner*, 4 N.E. 2d 282, 293 (Mass. 2014)). Moreover, although armed robbery requires possession of a dangerous weapon, "[a] defendant need not have used or displayed the dangerous weapon during the robbery." *Id.* at 320 (quoting *Commonwealth v. Anderson*, 963 N.E. 2d 704, 718, (Mass. 2012)). "Thus," the First Circuit explained, "we conclude that there is no reason, in principle, that a purse-snatcher with a knife in his or her pocket could not be convicted of armed robbery." *Id.* at 322; *see also id.* at 314 ("physical force," as a required element under the ACCA's force clause, "mean[s] *violent* force—that is, force capable of causing physical pain or injury to another person" (internal quotation marks omitted)). Accordingly, the First Circuit held, Massachusetts armed robbery is not categorically a violent felony under the ACCA. *Id.* at 324.[6]

---

[6] As was true in *United States v. Flannery*, 230 F. Supp. 3d 74, 75 (D.R.I. 2017), "[t]he Government does not advance an argument that [armed robbery is] divisible [between the actual-force form and the threatened force form], and the Court does not find that they are." That is, "[u]nder Massachusetts law, a jury does not need to make a finding for the force component—whether the defendant used force or threatened force." *Id.*; *see also Starks*, 861 F.3d at 230 n.14 (explaining that the government's concession that armed robbery is not divisible is supported by "case law holding that a jury need not be unanimous about whether armed robbery was committed by force or by threat of force").

As to the last predicate conviction relied upon by the government, Massachusetts ABDW, this offense "comes in two forms: intentional and reckless." *United States v. Kennedy*, 881 F.3d 14, 19 (1st Cir. 2018). Although the intentional form of Massachusetts ABDW is a violent felony under the ACCA's force clause, reckless ABDW is not. *Id.* (citing *United States v. Tavares*, 843 F.3d 1, 13 (1st Cir. 2016), and *United States v. Windley*, 864 F.3d 36, 39 (1st Cir. 2017)). Accordingly, as both forms of Massachusetts ABDW do not qualify as violent felonies under the ACCA, "ABDW is not categorically a violent felony." *Id.* Thus, in order to conclude that Defendant's 1977 conviction for ABDW qualifies as a predicate violent felony under the ACCA, the court "would need to find both that Massachusetts ABDW is divisible into its intentional and reckless forms," and that Defendant was convicted of the intentional form. *Id.* at 19-20 However, as was true in *Kennedy*, "even assuming that intentional ABDW is a separate, divisible form of Massachusetts ABDW, the record . . . does not plainly show that [Defendant] [was found] guilty [of] that form of the offense." *Id.* at 24. This is because neither party provided *Shepard* documents which might help the court determine whether Defendant "was previously convicted of the ACCA-qualifying form of the offense (here, intentional ABDW)." *Id.* at 20; *see also Windley*, 864 F.3d at 37 ("The parties tell us that *Shepard* documents relating to Windley's ABDW convictions no longer exist, so those convictions qualify as convictions for violent felonies only if both the intentional and reckless forms of ABDW are violent felonies."). As a result, Defendant's conviction for ABDW does not qualify as a predicate violent felony under the ACCA.

Because Defendant only has two predicate violent felonies (both ADW), one short of the three needed for an enhanced penalty under the ACCA, he is entitled to be resentenced on Count Four.

B.      18 U.S.C. § 3559(c) (Count One)

The court next addresses whether Defendant is entitled to resentencing on Count One because he is no longer subject to a mandatory minimum life sentence under the "three strikes" provision of 18 U.S.C. § 3559(c). The government argues that because *Johnson* does not apply to 18 U.S.C. § 3559(c), Defendant cannot satisfy the requirements of 28 U.S.C. § 2255(h)(2) (requiring a second or successive 2255 motion to contain "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"). Next, the government argues Defendant cannot overcome his procedural default. In addition, the government argues that even if *Johnson* does apply to invalidate the residual clause, Defendant still has sufficient qualifying predicates under the force clause.

As mentioned, *Johnson* created a new rule of constitutional law, which was made retroactive in *Welch*, and was previously unavailable. "That new rule is this: The text of the residual clause, as employed in the ACCA, is too vague to provide, consistent with due process, a standard by which courts must fix criminal sentences." *Moore v. United States*, 871 F.3d 72, 80 (1st Cir. 2017). As was true in *Moore*, which addressed an application to file a second or successive 2255 motion challenging the residual clause of the mandatory career offender guidelines,[7] Defendant "simply asks that this new rule be applied directly to another law" which used language similar to the ACCA's residual clause "to provide a standard by which a court fixed his sentence." *Id.*; *see also United States v. Hammond*, 354 F. Supp. 3d 28, 47 (D.D.C. 2018) ("*Johnson* articulated a new rule that Hammond merely asks to be applied to a materially indistinguishable circumstance, simply swapping the ACCA's residual clause for its mandatory Guidelines' parallel."); *United States v. Roy*, 282 F. Supp. 3d 421, 428 (D. Mass. 2017) ("The rule Roy relies on here is the rule announced in *Johnson* . . . , simply

---

[7] Prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines were mandatory, not advisory.

applied to the pre-*Booker* career offender guidelines."). In granting the application in *Moore*, the First

Circuit suggested that the residual clause in the pre-*Booker*, mandatory sentencing guidelines "is not

clearly different in any way that would call for anything beyond a straightforward application of

*Johnson*." *Moore*, 871 F.3d at 82; *see also id.* ("Congress in § 2255 used words such as 'rule' and 'right'

rather than 'holding.' Congress presumably used these broader terms because it recognizes that the

Supreme Court guides the lower courts not just with technical holdings but with general rules that

are logically inherent in those holdings, thereby ensuring less arbitrariness and more consistency in

our law.").

    Subsequently, the Supreme Court made essentially the same point in *Dimaya* in holding the

residual clause of the definition of "crime of violence" in 18 U.S.C. § 16(b) (as incorporated into the

Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F)) is unconstitutionally vague: "*Johnson* is a

straightforward decision, with equally straightforward application here. . . . *Johnson* effectively

resolved the case now before us." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018); *see id.* at 1223

("*Johnson* tells us how to resolve this case. . . . Section 16(b) possesses the exact same two features

[which rendered the ACCA's residual clause unconstitutionally vague]. And none of the minor

linguistic disparities in the statutes make any real difference."); *see also Davis*, 139 S. Ct. at 2326.

Critically, for present purposes, the statutory language held unconstitutional in *Dimaya* (on the basis

of *Johnson*) is almost word-for-word the same as the residual clause in 18 U.S.C. § 3559(c)(2)(F)(ii).

*Compare* 18 U.S.C. § 16(b) ("The term 'crime of violence' means . . . any other offense that is a felony

and that, by its nature, involves a substantial risk that physical force against the person *or property* of

another may be used in the course of committing the offense." (emphasis added)), *with* 18 U.S.C. §

3559(c)(2)(F)(ii) ("the term 'serious violent felony means . . . any other offense punishable by a

maximum term of imprisonment of 10 years or more . . . that, by its nature, involves a substantial

risk that physical force against the person of another may be used in the course of committing the offense.").[8]

Thus, as one court has explained, the *Dimaya* decision as well as other Supreme Court decisions since and including *Johnson* "illustrate[] that *Johnson* is not ACCA specific." *Hammond*, 354 F. Supp. 3d at 45-46. In particular, that court stated that in *Dimaya* "Section 16(b) was found unconstitutional not by extension of *Johnson* but by enforcement of *Johnson*." *Id.* at 47. Moreover, on the question of whether *Johnson* is retroactive to non-ACCA cases, the court explained that *Welch* (which held *Johnson* was retroactive) "reaches as far as *Johnson*. Analyzing whether *Welch* applies to Hammond is no different than analyzing whether *Johnson* applies to Hammond." *Id.* at 44 n.9; *see United States v. Minjarez*, --- F. Supp. 3d ----, 2019 WL 1209625, at *11 (E.D. Cal. Mar. 14, 2019) ("[C]ourts throughout the Ninth Circuit (including this one) have found that *Johnson*'s retroactivity is not limited to cases involving the ACCA's residual clause . . . ."); *Roy*, 282 F. Supp. 3d at 428 (explaining that *Johnson*'s "rule is retroactive to cases on collateral review and nothing in *Welch* suggests that the retroactivity determination is limited to cases challenging sentences imposed under the ACCA"); *see also Cross*, 892 F.3d at 307. This court finds the decisions applying *Johnson*'s rule beyond the ACCA to other, similarly worded statutes compelling. Accordingly, the court concludes Defendant's 2255 motion contains, by virtue of *Johnson*, "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by 28 U.S.C. § 2255(h)(2).

With regard to procedural default, the court finds Defendant had cause for failing to previously raise this challenge for the same reasons described above as to Count Four. That is, "no

---

[8] The only differences between these definitions are that section 16(b) requires the predicate offense be a felony, whereas section 3559(c)(2)(F)(ii) requires it to be an offense that is punishable by a maximum term of 10 years imprisonment, and section 16(b) includes "physical force against the person *or property* of another," whereas section 3559(c)(2)(F)(ii) includes only "physical force against the person of another."

one—the government, the judge, or the [defendant]—could reasonably have anticipated *Johnson*." *Cross*, 892 F.3d at 295 (quoting *Snyder*, 871 F.3d at 1127). As a result, Defendant's challenge was "so novel" at the time of Defendant's sentencing and appeal "that its basis [was] not reasonably available to counsel." *Reed*, 468 U.S. at 16.

Turning to the merits—which, again, "dovetails" with the procedural default prejudice inquiry, *Lassend*, 898 F.3d at 123—the court concludes it must use the categorical approach to determine whether prior convictions qualify as "serious violent felonies" under both the residual clause and the force clause of section 3559(c)(2)(F)(ii).[9] *See United States v. Kroll*, 918 F.3d 47, 52-54 (2d Cir. 2019); *United States v. Johnson*, 915 F.3d 223, 228 (4th Cir. 2019); *United States v. Leaverton*, 895 F.3d 1251, 1253-54 (10th Cir. 2018); *Minjarez*, 2019 WL 1209625, at *5. In *Davis*, the Supreme Court addressed whether the categorical approach applies to 18 U.S.C. § 924(c)(3)(B). *Davis*, 139 S. Ct. at 2327-29. It acknowledged that unlike the ACCA and 18 U.S.C. § 16, addressed in *Johnson* and *Dimaya*, which "required a *judge* to determine whether a defendant's *prior conviction* was for a 'crime of violence' or 'violent felony,'" a "§ 924(c) prosecution focuses on the conduct with which the defendant is *currently charged*." *Id.* at 2327. Therefore, because "[t]he government already has to prove to a jury that the defendant committed all the acts necessary to punish him for the underlying crime of violence . . . [,] it wouldn't be that difficult to ask the jury to make an additional finding about whether the defendant's conduct"—using a "case-specific approach," rather than the categorical approach—"also created a substantial risk that force would be used." *Id.* As a result, "a case-specific approach wouldn't yield the same practical and Sixth Amendment complications under § 924(c) that it would have under the ACCA or § 16." *Id.* The Court nevertheless held, based on the text, context, and history of § 924(c), that the statute mandates a categorical approach. *Id.* at 2327-33. Section

---

[9] Again, the government does not assert that Defendant's predicates satisfy the enumerated offenses clause of 18 U.S.C. § 3559(c)(2)(F)(i).

3559(c), however, does require courts to consider prior convictions, making the categorical approach even more appropriate than in *Davis* in light of the practical and Sixth Amendment concerns which arise from that type of backwards-looking review. *See Dimaya*, 138 S. Ct. at 1217; *Johnson*, 135 S. Ct. at 2562. Moreover, the language of § 3559(c) is essentially identical to that used in § 924(c)(3)(B) (and 18 U.S.C. § 16), including the use of the phrase "by its nature." As the Supreme Court has explained, "when we speak of the nature of an offense, we're talking about 'what an offense normally—or, as we have repeatedly said, ordinarily—entails, not what happened to occur on one occasion.'" *Davis*, 139 S. Ct. at 2329 (quoting *Dimaya*, 138 S. Ct. at 1217). Reading the parallel language of § 3559(c), § 924(c), § 16, and the ACCA similarly—as requiring a categorical approach— "yields sensibly congruent applications across all these other statutes" and is consistent with the presumption "that the same language in related statutes carries a consistent meaning." *Id.* at 2329.

The court next considers whether the residual clause of 18 U.S.C. § 3559(c)(2)(F)(ii), under the categorical approach, is unconstitutionally vague in accordance with *Johnson* and *Dimaya*, and concludes that it is. As mentioned, the Supreme Court in *Dimaya* relied on a "straightforward application" of *Johnson*. *Dimaya*, 138 S. Ct. at 1213. It explained that *Johnson* held "[t]wo features of [ACCA's] residual clause," also present in 18 U.S.C. § 16, "conspire[d] to make it unconstitutionally vague." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557). Fist, the "ACCA's residual clause created 'grave uncertainty about how to estimate the risk posed by a crime' because it 'tie[d] the judicial assessment of risk' to a hypothesis about the crime's 'ordinary case,'" rather than the actual facts of the offense, as required under the categorical approach. *Id.* (quoting *Johnson*, 135 S. Ct. at 2557). Second, the "ACCA's residual clause left unclear what threshold level of risk made any given crime a 'violent felony.'" *Id.* Accordingly, "'[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause' violates the guarantee of due process." *Id.* (quoting *Johnson*, 135 S. Ct. at 2558).

Despite some differences in the statutory language, the Supreme Court held 18 U.S.C. § 16 "possesses the exact same two features" as the ACCA. *Id.* at 1223. "It too 'requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents' some not-well-specified-yet-sufficiently-large degree of risk." *Id.* at 1216 (quoting *Johnson*, 135 S. Ct. at 2558). "The result," the Supreme Court explained, "is that § 16(b) produces, just as the ACCA's residual clause did, 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" *Id.* (quoting *Johnson*, 135 S. Ct. at 2558).

The same is true as to the residual clause in 18 U.S.C. § 3559(c)(2)(F)(ii). As mentioned, the language in § 3559(c)(2)(F)(ii)'s residual clause is almost exactly the same as 18 U.S.C. § 16(b). *See Minjarez*, 2019 WL 1209625, at *9-11 (concluding the residual clause in 18 U.S.C. § 3559(c)(2)(F)(ii) is unconstitutionally vague because it is "nearly identical to the residual clause in § 16(b)"). In fact, the distance between the ACCA's residual clause and 18 U.S.C. § 16(b) is much greater, yet in *Dimaya* the Supreme Court relied on a "straightforward application" of *Johnson* and concluded "none of the minor linguistic disparities in the statutes makes any real difference." *Dimaya*, 138 S. Ct. at 1213, 1223. Just as *Johnson* told the Supreme Court "how to resolve" *Dimaya*, *id.* at 1223, the Supreme Court's decision in *Dimaya* resolves the question before this court. Accordingly, the residual clause of 18 U.S.C. § 3559(c)(2)(F)(ii)—which defines "serious violent felony" as "any other offense punishable by a maximum term of imprisonment of 10 years or more . . . that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense"—is unconstitutionally vague because it "denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S. Ct. at 2557; *see also Davis*, 139 S. Ct. at 2326.

As a result, Defendant only qualifies for an enhanced penalty under 18 U.S.C. § 3559(c) if he has two or more serious violent felonies under the force clause of section 3559(c)(2)(F)(ii). The PSR

identified the 1977 convictions for ABDW and assault on a prison guard (¶ 77) and the 1985 convictions for armed robbery and ADW (¶ 81) as the predicate serious violent felonies under 18 U.S.C. § 3559(c). (PSR § 125a.) As clarified in the briefing, the parties agree that the ADW conviction does not qualify as a predicate because it was not "punishable by a maximum term of imprisonment of 10 years or more," as required by section 3559(c)(2)(F)(ii). (*See* Dkt. No. 306 at 13; Dkt. No. 307 at 3-4.) That leaves three potential predicate serious violent felonies: ABDW, assault on a prison guard, and armed robbery.[10]

As explained above in the context of the ACCA,[11] "Massachusetts ABDW comes in two forms: intentional and reckless." *Kennedy*, 881 F.3d at 19. Reckless ABDW is not a serious violent felony under the force clause of section 3559(c)(2)(F)(ii) for the reasons explained in *Windley*, 864 F.3d at 38-39 (conviction for Massachusetts ABDW "does not require that the defendant intend to cause injury . . . or even be aware of the risk of serious injury that any reasonable person would perceive"). And, again, "even assuming that intentional ABDW is a separate, divisible form of Massachusetts ABDW, the record . . . does not plainly show that [Defendant] [was found] guilty [of] that form of the offense," because *Shepard* documents are apparently unavailable. *Kennedy*, 881 F.3d; *see also Windley*, 864 F.3d at 37.

Similarly, Defendant's conviction for assault on a prison guard is not a serious violent felony under the force clause. Defendant asserts—and the government has not disputed—that the state-

---

[10] The government appears to argue that a prior conviction for possession of a sawed-off shotgun also qualifies. However, this conviction was not identified in the PSR as a predicate serious violent felony under 18 U.S.C. § 3559(c) and, therefore, does not appear to have been a basis for the court's life sentence. In any event, the court agrees with Defendant that possession of a sawed-off shotgun "is not an offense which has as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Fortes*, 141 F.3d 1, 6 (1st Cir. 1998) (internal quotation marks omitted).

[11] Because the force clause in 18 U.S.C. § 3559(c)(2)(F)(ii) contains the same language as the force clause in the ACCA, the court applies the same precedent to both statutes. *See Dimaya*, 138 S. Ct. at 1220 ("In interpreting statutes like § 16(b), this Court has made clear that 'physical force' means 'force capable of causing physical pain or injury.'" (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010))).

court docket sheet does not indicate the statute under which Defendant was charged but that this offense could have been brought under either Mass. Gen. Laws ch. 265, § 13D or Mass. Gen. Laws ch. 127, § 38B. Either way, the First Circuit has explained that the elements of the crimes under these statutes are parallel. *See United States v. Jonas*, 689 F.3d 83, 88 (1st Cir. 2012). That is, both statutes prohibit simple assault and battery, but Mass. Gen. Laws ch. 265, § 13D includes the additional requirement that the assault and battery was committed against a "public employee when such person is engaged in the performance of his duties at the time of such assault and battery," and Mass. Gen. Laws ch. 127, § 38B includes the additional requirements that the assault and battery was committed by a "person in the custody of a correctional facility . . . upon an officer or other employee, any volunteer or employee of a contractor in any such facility or any duly authorized officer or other employee of any such facility engaged in the transportation of a prisoner."

In *Faust*, the First Circuit addressed the crime of assault and battery on a police officer ("ABPO") under Mass. Gen. Laws 265, § 13D and explained that simple assault and battery, as incorporated into the statute, encompasses both intentional assault and battery and reckless assault and battery. *Faust*, 853 F.3d at 55. Intentional assault and battery itself "includes both harmful battery and offensive battery. Harmful battery is defined as '[a]ny touching with such violence that bodily harm is likely to result,'" whereas "[o]ffensive battery is defined as any unconsented touching that constitutes an affront to the victim's personal integrity." *Id.* (quoting *Commonwealth v. Eberhart*, 965 N.E. 2d 791, 798 (Mass. 2012)); *see also Commonwealth v. Beal*, 52 N.E.3d 998, 1009 (Mass. 2016) ("Like the general crime of assault and battery, assault and battery upon a public employee can be committed through a harmful battery, a reckless battery, or an offensive battery."). The First Circuit concluded that intentional assault and battery is not divisible between the offensive and harmful forms, and "[b]ecause offensive assault and battery does not require violent force, the intentional form of ABPO is therefore overbroad and categorically cannot count as a predicate for ACCA

purposes." *Faust*, 853 F.3d at 58.[12] This court concludes the same is true as to Mass. Gen. Laws ch. 127, § 38B and for purposes of 18 U.S.C. § 3559(c). *See Jonas*, 689 F.3d at 88. Moreover, reckless assault and battery, as incorporated into both statutes, is not a serious violent felony for the same reasons reckless ABDW is not a serious violent felony. *See United States v. Dancy*, 248 F. Supp. 3d 292, 298 (D. Mass. 2017); *see also Windley*, 864 F.3d at 38-39. Therefore, regardless of whether the reckless and intentional forms of assault and battery are divisible and the fact that *Shepard* documents no longer exist, Defendant's conviction for assault on a prison guard is categorically not a serious violent felony under 18 U.S.C. § 3559(c).

Lastly, Defendant's conviction for Massachusetts armed robbery may not serve as a predicate for the same reasons explained above regarding the ACCA. In particular, "there is no reason, in principle, that a purse-snatcher with a knife in his or her pocket could not be convicted of armed robbery." *Starks*, 861 F.3d at 322. Under this scenario—where the purse-snatcher uses "just enough force to make the victim aware of the purse snatching, but without touching the victim, without any awareness by the victim of the impending act, . . . without any intention to use force against the victim if the victim resists," and without displaying or using the weapon, *id.* at 319-20— the defendant has not used, attempted to use, or threatened to use the requisite degree of physical force under 18 U.S.C. § 3559(c). *See id.* at 314 ("[P]hysical force . . . mean[s] *violent* force—that is, force capable of causing physical pain or injury to another person." (internal quotation marks omitted)). Accordingly, because the government does not assert armed robbery is divisible between its actual-force and threatened force components—and the court finds it is not, *see supra* footnote 6—armed robbery is not categorically a serious violent felony. *See id.* at 324.

---

[12] This holding, dealing with ABPO, does not offend the First Circuit's holding in *Kennedy* that the intentional form of ABDW, with its additional requirement that the crime be committed by means of a dangerous weapon, is a violent felony under the ACCA. *See Kennedy*, 881 F.3d at 19; *Tavares*, 843 F.3d at 13.

Defendant, therefore, does not have two or more serious violent felonies under 18 U.S.C. § 3559(c) and is entitled to be resentenced on Count One because he is no longer subject to a mandatory minimum life sentence.

C.  18 U.S.C. § 924(c) (Count Two)

Defendant also seeks to vacate his conviction as to Count Two, using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), arguing the predicate crime of violence—bank robbery in violation of 18 U.S.C. § 2113(a)—does not satisfy the force clause of 18 U.S.C. § 924(c)(3)(A) and the residual clause is unconstitutional. As discussed, the Supreme Court in *Davis* held the residual clause of § 924(c)(3)(B) is unconstitutionally vague. *Davis*, 139 S. Ct. 2319. Nevertheless, the court concludes that Defendant's federal bank robbery conviction satisfies the force clause of 18 U.S.C. § 924(c)(3)(A), so despite *Davis*'s favorable holding, it does not require that Defendant's conviction on Count Two be vacated.[13]

Section 2113(a) provides:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

---

[13] The court assumes—favorably toward Defendant—that he has cause for his procedural default and satisfies the requirements of 28 U.S.C. § 2255(h)(2) as to this claim.

In *Hunter v. United States*, 673 F.3d 388, 390 (1st Cir. 2017), the First Circuit held "that federal bank robbery" under 18 U.S.C. § 2113(a) is a crime of violence "under the force clause of § 924(c)(3)." The First Circuit in *Hunter* relied on its earlier decision in *United States v. Ellison*, 866 F.3d 32 (1st Cir. 2017), which addressed federal bank robbery under § 2113(a) in the context of the force clause of the career offender guidelines. Importantly, however, neither *Hunter* nor *Ellison* addressed whether 18 U.S.C. § 2113(a) is divisible between two or more separate offenses. In *Ellison*,

> [t]he parties agree[d] that § 2113(a) sets forth as a separate offense "by force and violence, or by intimidation, tak[ing], or attempt[ing] to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association," and that Ellison was convicted of this offense.

*Id.* at 35. The First Circuit went on to address whether the "intimidation" portion of "by force and violence, or by intimidation" has "as an element a 'threatened use of physical force,'" and concluded that it does. *Id.* at 35-40.[14] But as the court pointed out in *Hunter*, the parties in *Ellison* agreed, and the First Circuit therefore did not decide, that § 2113(a) is "divisible, setting forth as separate offenses robbery by 'force and violence, or by intimidation,' and robbery by 'extortion.'" *Hunter*, 873 F.3d at 390 n.1. Similarly, in *Hunter*, the First Circuit only addressed whether violating § 2113(a) by "intimidation" constitutes a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A). *Id.*

Here, in contrast, Defendant argues § 2113(a) is not divisible between the "force and violence, or intimidation" portion of the statute and the "extortion" portion the statute. Defendant also argues § 2113(a) is not divisible between the first paragraph (addressing "tak[ing] or attempt[ing] to take") and the second paragraph (addressing "enter[ing] or attempt[ing] to enter"). Thus,

---

[14] The court noted that "Ellison understandably does not argue that committing the offense by means of 'force and violence,' rather than 'intimidation,' would not necessarily involve the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* at 36 n.2. Defendant here similarly does not argue the "force and violence" portion of the statute requires anything less than "the use, attempted use, or threatened use of physical force."

Defendant contends § 2113(a) sets forth alternative means of committing a single, overbroad offense, rather than separate elements of different offenses. The court, however, rejects both of Defendant's arguments.

As both the Second Circuit and Ninth Circuit recently concluded, § 2113(a) contains separate offenses for "bank robbery and bank extortion." *United States v. Evans*, 924 F.3d 21, 2019 WL 2017190, at *5 (2d Cir. May 8, 2019); *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018); *see also Hammond*, 354 F. Supp. 3d at 49; *Chance v. United States*, 2017 WL 11049324, at *6 (S.D. Fla. Oct. 30, 2017), *report and recommendation adopted*, 2017 WL 11049323, (S.D. Fla. Nov. 15, 2017). As the court in *Chance* explained, "courts treat robbery and extortion as separate elements" under the Hobbs Act, and "[c]ourts frequently analogize Hobbs Act robbery and § 2113(a) bank robbery." *Chance*, 2017 WL 11049324, at *6 (collecting cases). In fact, "the extortion language was added to § 2113(a) to ensure that extortion directed at federally insured banks was prosecuted under that section and not under the Hobbs Act." *Id.*; *see United States v. Holloway*, 309 F.3d 649, 651 (9th Cir. 2002) (explaining that "[t]he House committee report stated the purpose of the amendment was 'to overrule those cases holding that only the Hobbs Act applies [to extortion of a bank], and those cases holding that both the Hobbs Act and 18 U.S.C. § 2193(a) apply, in order to make 18 U.S.C. § 2113(a) the exclusive provision for prosecuting bank extortion.'" (quoting H.R.Rep. No. 99–797 at 13)). Moreover, the Pattern Criminal Jury Instructions for the District Courts of the First Circuit, both as originally promulgated and as updated on February 1, 2019 by District Judge Nancy Torresen, do not include "extortion" as a means of committing bank robbery under 18 U.S.C. § 2113(a), thereby indicating bank extortion is a separate offense. *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18.2113(a) (updated 2019); Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18 (1997); *Mathis v. United*

*States*, 136 S. Ct. 2243, 2257 (2016). Accordingly, this court agrees with those cases holding § 2113(a) sets forth separate, divisible offenses for bank robbery and bank extortion.

Similarly, this court concludes that "[t]he first and second paragraphs" of § 2113(a)—one addressing "tak[ing]," and the other addressing "enter[ing]"—"describe two 'different crimes, not . . . different methods of committing one offense,' and are therefore divisible." *Chance*, 2017 WL WL 11049324, at *5 (collecting cases); *see also Kucinski v. United States*, 2016 WL 4444736, at *2 n.3 (D.N.H. Aug. 23, 2016) ("It is clear that the 'entering' portion of § 2113(a) sets forth a distinct set of elements, and is divisible under *Descamps* [*v. United States*, 570 U.S. 254 (2013)]."). The First Circuit explained in *United States v. Almeida*, 710 F.3d 437, 440 (1st Cir. 2013)—although not addressing divisibility—that "subsection 2113(a) can be violated in two distinct ways: (1) bank robbery . . . ; and (2) bank burglary, which simply involves entry or attempted entry into a bank with the intent to commit a crime therein." In addition, the Pattern Criminal Jury Instructions again do not include "enter[ing]" or "attempt[ing] to enter" a bank with the intent to commit a crime as a means of committing bank robbery under the statute. *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18.2113(a) (updated 2019); Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18 (1997). Accordingly, section 2113(a) contains a divisible offense of bank robbery: taking or attempting to take money by intimidation or force and violence.

Under the modified categorical approach, the court must next determine which of these divisible offenses Defendant was convicted of. The Superseding Indictment, in Count One, states that Defendant "did unlawfully, willfully and knowingly take, by force and violence and by intimidation, from the person and presence of employees of Baybank, money belonging to Baybank, the deposits of which were then insured by Federal Deposit Insurance Corporation" in violation of 18 U.S.C. § 2113(a). (Dkt. No. 297-1.) This language demonstrates that Defendant was convicted under the first paragraph of § 2113(a) and, specifically, under the "force and violence, or

intimidation" portion of the statute and not the "extortion" portion. *See Chance*, 2017 WL 11049324, at *5-6; *Kucinski*, 2016 WL 4444736, at *2 n.3.

Lastly, Defendant takes issue with the First Circuit's reasoning that "intimidation" under § 2113(a) "has as an element a 'threatened use of physical force,'" *Ellison*, 866 F.3d at 35-36; *see Hunter*, 873 F.3d at 390. But, as Defendant recognizes, this court is bound by that precedent. Therefore, it is unnecessary to address Defendant's arguments—which he makes in order "to preserve the issue for potential further review" (Dkt. No. 296 at 26)—other than to note that they are preserved.

Accordingly, Defendant's conviction for bank robbery in violation of 18 U.S.C. § 2113(a) constitutes a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3), and Defendant is not entitled to have his conviction on Count Two vacated.

## IV. CONCLUSION

For the foregoing reasons, the court ALLOWS Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 296), in part, to the extent it seeks resentencing on Counts One and Four, but DENIES Defendant's motion, in part, to the extent it seeks to vacate his conviction on Count Two. The Clerk's Office is directed to schedule a status conference for resentencing purposes.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge